UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KENT G. SHULTZ,                      )
                                     )
                  Plaintiff,         )          Case No. 1:05-cv-697
                                     )
v.                                   )          Honorable Robert Holmes Bell
                                     )
JOHN S. RUBITSCHUN et al.,           )
                                     )
                  Defendants.        )
_____)


## OPINION

　　　　This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983.

Plaintiff has paid the initial partial filing fee.  Under the Prison Litigation Reform Act, PUB. L. NO.

104-134, 110 STAT. 1321 (1996) ("PLRA"), the Court is required to dismiss any prisoner action

brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which

relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C.

§ 1915A.  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404

U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or

wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the

Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.  Factual Allegations

Plaintiff was convicted in the Ingham County Circuit Court of three counts of criminal sexual conduct in the first-degree, MICH. COMP. LAWS § 750.520(b).  On May 29, 1985, he was sentenced as a first time offender to imprisonment of twenty to forty years.   He is presently confined at the Parnell Correctional Facility.  Plaintiff was denied parole in November 1995, April 2004, and September 2005.  Plaintiff's complaint concerns the procedures, standards, policies and laws used in making the decisions in 2004 and 2005 to deny Plaintiff a parole. He sues Michigan Department of Corrections (MDOC) Director Patricia Caruso; Parole Board Chairman John S. Rubitschun; and Parole Board members James Atterberry, Miguel Berrios, Charles Braddock, Stephen DeBoer, Enid Livingston, James Quinlan, Marianne Samper, Barbara Sampson, and Artina Hartman.

During his incarceration Plaintiff completed sex offender therapy and the substance abuse program, including the relapse-prevention phase of the program.  He alleges that he attained membership in societies for gifted persons, was awarded certificates of achievement within the MDOC, achieved an outstanding work record, and participated as an officer and member of the Warden's Forum advisory group. Prior to Plaintiff's 2004 parole hearing, Plaintiff asserts that he made appropriate living arrangements, and arranged for tentative employment and post-release sex offender therapy.  He provided to the parole board  letters of support from three responsible persons including a Christian Scientist banker, a former district attorney, and the Director of the Michigan City Prisoner Outreach program.

- 2 -

Plaintiff was interviewed on April 21, 2004, by Defendant parole board member Charles Braddock.  Defendant Braddock chose to defer his vote until Plaintiff had undergone an updated mental health evaluation.  However, on May 17, 2004, board members John Rubitschun and George Lellis[1] voted to deny parole, giving Plaintiff an eighteen month continuance.  The decision to deny Plaintiff's parole was made although the parole board never requested the updated mental health examination sought by Defendant Braddock.

On September 1, 2005, Plaintiff was again considered for parole.  A hearing was conducted by Defendant parole board member Stephen DeBoer.   During this interview, Plaintiff alleges that Defendant DeBoer was unprepared and uninformed about Plaintiff's record.  Defendant DeBoer failed to request an updated psychological assessment.  Parole was subsequently denied.

Plaintiff alleges that at the time he was sentenced in 1985, rehabilitated prisoners serving long, indeterminate sentences were routinely paroled at their earliest release date unless their institutional record was very poor or their attitude extremely negative.  However, after October 1992, the Michigan Parole Board adopted a policy that sex offenders would generally not be granted paroles.  Moreover, since 2000, sex offenders are automatically given a -5 score under the mental health section of the Parole Guidelines Score Sheet without an objective determination that such a score is warranted.  Plaintiff contends that the result of the change in policy and law has caused him to remain imprisoned longer than the sentencing judge intended or anticipated, thereby violating the Constitution's Ex Post Facto Clause. Additionally, Plaintiff claims that compelling him to serve his maximum sentence violates MICH. COMP. LAWS §§ 769.8, 769.9 and 791.234(4).  Finally, he claims

---

[1] George Lellis is no longer a member of the Michigan Parole Board and has not been named as a defendant in this action.

- 3 -

that the parole process violated his due process rights where (a) he was not given an updated psychological assessment as required by Administrative Rule 791.7715(5)[2]; (b) he was given an unwarranted -5 mental health score;  (c) the parole board failed to inform him how he could improve his chances of parole; and (d) the parole board is comprised of former law enforcement officers who are biased against potential parolees.

Plaintiff seeks an order directing Defendants to conduct a new parole hearing using the standards, policies and laws that were in effect at the time he was convicted and sentenced in 1985, and to comply with Administrative Rule 791.7715(5) by providing Plaintiff with a psychological evaluation prior to conducting the parole hearing.

II.    Heck v. Humphrey

A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983.  *See Preiser v. Rodriguez*, 411 U.S. 475, 484, 493 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody).  The Supreme Court has held that a state prisoner cannot make a cognizable claim under § 1983 for an alleged unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order,

---

[2]  The Rule provides:
A prisoner being considered for parole shall receive psychological or psychiatric evaluation before the release decision is made if the prisoner has a history of any of the following:
(a) Hospitalization for mental illness within the past 2 years.
(b) Predatory or assaultive sexual offenses.
(c) Serious or persistent assaultiveness within the institution.
MICH. ADMIN. CODE R. 791.7715(5) (amended eff. Jan. 26, 1996).

declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *see also Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997 ).  However, in *Wilkinson v. Dotson*, 125 S. Ct. 1242, 1247 (2005), the Supreme Court clarified that § 1983 remains available to state prisoner for procedural challenges where success in the action would not necessarily spell immediate or speedier release for the prisoner.  Plaintiff does not directly seek release from prison; rather, he requests a new hearing and declaratory and injunctive relief preventing Defendants from violating his rights in future parole proceedings.  As a consequence, under *Wilkinson*, success in this action would not necessarily demonstrate the invalidity of Plaintiff's continued confinement, so his action does not appear to be *Heck*-barred.  *See Dotson v. Wilkinson*, 329 F.3d 463 (6th Cir. 2002) (en banc) (holding that challenge to parole eligibility as opposed to challenge to denial of parole is cognizable in § 1983 action); *Seagroves v. Tennessee Bd. of Probation & Parole*, No. 01-6274, 2002 WL 1379028 (6th Cir. 2002) (vacating district court's dismissal of action because prisoner challenging *ex post facto* parole procedures states cognizable claim under § 1983).  Although Plaintiff's action is cognizable under § 1983, it fails to state a claim as set forth below.

### III.    Failure to state a claim

 A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint.  *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993).  The Court must accept the factual allegations in the complaint as true, but need not adopt the plaintiff's legal conclusions or unwarranted factual inferences.  *United Foot & Commercial Worker*s *Local 1099 v. City of Sidney*, 364 F. 3d 738, 745 (6th Cir. 2004).  To state a claim under 42 U.S.C. § 1983, a

plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.  Due Process

Plaintiff fails to state a due process claim because he  has no liberty interest in being released on parole.  There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence.  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  Although a state may establish a parole system, it has no duty to do so, and thus, the presence of a parole system by itself does not give rise to a constitutionally-protected liberty interest in parole release.  *Id.* at 7; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  Rather, a liberty interest is present only if state law entitles an inmate to release on parole.  *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan procedural authorities to deny parole," has held that the Michigan system does not create a liberty interest in parole.  Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's parole scheme creates no liberty interest in being released on parole.  *See Ward v. Stegall*, No. 03-1804, 2004 WL 614581 (6th Cir. March 24, 2004); *Martin v. Ohio Adult Parole Auth.*, No. 03-3642, 2003 WL 22976604, at *1 (6th Cir. Dec. 8, 2003); *Bullock v. McGinnis*, No.

00-1591, 2001 WL 180978, at *2 (6th Cir. Feb. 14, 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Michigan Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999).  Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole.  *See Fifer v. Michigan Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Michigan Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990).  Finally, the Michigan Supreme Court has recognized that there is no liberty interest in parole under the Michigan system.  *Glover v. Michigan Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).  Accordingly, Plaintiff has no liberty interest at stake.  Because Plaintiff has no liberty interest at stake, he fails to state a claim for a violation of his procedural due process rights.  *See Sweeton*, 27 F.3d at 1164-65.

### B.  Ex Post Facto Clause

Plaintiff alleges that the denial of his parole effectively usurped the original judgment and sentence of the trial court, inasmuch as he continues to be incarcerated beyond his minimum sentence.  He claims that his parole was denied as a result of changes in Michigan law made subsequent to his conviction and sentencing, which violates his rights under the Ex Post Facto

Clause.  Plaintiff challenges the following alleged 1992 changes: (1) an increase in the interval between parole considerations; (2) the practice of automatically assigning sex offenders a -5 mental health score; (3) a policy that sex offenders would not generally be granted paroles; and (4) a change in the parole board from a "civil service" entity to one under the direct control of Michigan's executive department.  The Constitution's Ex Post Facto Clause prohibits the enactment of any law that "retroactively alter[s] the definition of crimes or increase[s] the punishment for criminal acts." *Collings v. Youngblood*, 497 U.S. 37, 43 (1990). In *California Dep't of Corr. v. Morales*, 514 U.S. 499 (1995), the Supreme Court considered whether a post-sentencing change to parole procedures constituted the type of change in the law subject to analysis under the Ex Post Facto Clause.  The Court declined to adopt an interpretation of the Clause that would "forbid[] any legislative change that has any conceivable risk of affecting a prisoner's punishment."  *Id.* at 508.  Instead, the Court established a test inquiring whether a change in the law "produced a sufficient risk of increasing the measure of punishment attached to the covered crimes."  *Id.* at 509.  A "sufficient risk of increased punishment" involves more than "some ambiguous sort of disadvantage" to an inmate. *Id.* at 506 n.3.

In *Shabazz v. Gabry*, 123 F.3d 909 (6th Cir. 1997), the Sixth Circuit analyzed the 1992 amendments to Michigan's parole laws regarding the frequency of parole review hearings. The Court specifically addressed the amendments as they pertain to inmates, such as Plaintiff, who were convicted between 1982 and 1992, and received long, indeterminate sentences.  Under the law at the time of their sentencing, these inmates were to be interviewed by a member of the parole board after four years and every two years thereafter, although inmates with long, indeterminate sentences became eligible for parole only after serving ten years of their sentence.  *Id.* at 911 (citing MICH. COMP. LAWS §§ 791.234 and 791.244, effective 1982).  Pursuant to the 1992 amendments, inmates

with long, indeterminate sentences receive their initial parole interviews after ten years and every five years thereafter. *Id.* at 910 (citing MICH. COMP. LAWS §§ 791.234 and 791.244, effective 1992). Applying the test set forth in *Morales*, the Court held that the 1992 amendments governing frequency of parole review hearings did not violate the Ex Post Facto Clause. *Id.* at 914. The Court reasoned that the "1992 amendments do not change the standard for parole, but allow prisoners ample opportunity to petition the parole board for interviews. Further, the 1992 amendments allows the parole board to grant parole interviews of its own volition, and to grant prisoners parole without an interview." *Id.* at 914. Accordingly, Plaintiff's challenge to the increase in the interval between parole considerations does not state a § 1983 claim.

Plaintiff next contends that the 1992 change in the parole board from a "civil service" entity to one under the direct control of Michigan's executive department has created a board that is no longer neutral and unbiased. Under Michigan law enacted in 1992, the MDOC Director appoints a ten member parole board. The members receive an annual salary set by the state legislature, but are no longer within the State's civil service provisions. MICH. COMP. LAWS MICH. COMP. LAWS § 791.231a(1). The Director may remove parole board members for incompetency, dereliction of duty, malfeasance, misfeasance or nonfeasance in office. MICH. COMP. LAWS § 791.231a(3). Plaintiff argues that the Director has appointed parole board members who are pro-law enforcement and, therefore, less inclined than their predecessors to grant parole to prisoners; and further, without civil service protection, members are subject to undue political influence.

Neutrality on the part of a parole board does not require civil service protection, or employment by a different agency, a law degree, or election or appointment as a judicial officer. *Morrissey v. Brewer,* 408 U.S. 471, 486 (1972); *see also Crowley v. Renico*, 81 F. App'x 36, 37 (6th

Cir. 2003) (finding a claim that the Michigan Parole Board does not constitute a neutral and detached hearing body, based upon essentially the same arguments presented in the present case, to be without merit).  Even civil service employees may be fired for reasons such as unsatisfactory service, failing to carry out their duties and obligations, or conduct unbecoming a state employee.  *Young v. Trombley*, No. 00-cv-10488-BC, 2002 WL 1461755, *2 (E.D. Mich. July 5, 2002).  "[T]he fact that Parole Board members are no longer civil service employees does not give the Director greater discretion in firing them and does not make them more amenable to political influence."  *Id.*  "The bias alleged by the [Plaintiff] -- the 'general tendency of an administrative agency to serve the executive under which it derives its authority,'" and the "'general bias in favor of the alleged state interest or policy'" -- does not render the agency unable to make an objective analysis.  *Id.* (quoting *Hammond v. Baldwin*, 866 F. 2d 172, 176 (6th Cir. 1989)).  Thus, although current parole board members are guided by an underlying philosophy that is different than the philosophy of former board members, this does not constitute the application of a newly enacted law or formal policy in a manner that would violate the Ex Post Facto Clause.

Finally, Plaintiff complains of a current alleged unwritten policy that sex offenders will generally not be granted parole and the practice of automatically assigning sex offenders a -5 mental health score.  Plaintiff has not identified a statute, written policy or written regulation that mandates a -5 mental health score for sex offenders.  Even assuming a written directive, the "parole board may depart from the parole guideline by denying parole to a prisoner who has a high probability of parole as determined under the parole guidelines or by granting parole to a prisoner who has a low probability of parole as determined under the parole guidelines."  MICH. COMP. LAWS § 791.233e(6).  Thus, the mental health score does not necessarily preclude parole where it would

otherwise be appropriate and consistent with the stated policy that release decisions "enhance the public safety."[3]   In addition, as discussed above, Administrative Rule 791.7715(5) requires that sex offenders being considered for parole receive psychiatric evaluation before the release decision is made, thereby creating the means for correcting any error in an initial mental health score.   A change in the law that creates only a speculative or attenuated possibility of increasing the measure of punishment for a particular crime does not violate the Ex Post Facto Clause. *Morales*, 514 U.S. at 509.

Although in Michigan a prisoner's release on parole is discretionary with the parole board, *see* MICH. COMP. LAWS §§ 791.234(6)(d), 791.234(7), and 791.234(9), the Court in *Garner v. Jones*, 529 U.S. 244 (2000), observed that the "presence of discretion does not displace the protections of the Ex Post Facto Clause," as the "danger that legislatures might disfavor certain persons after the fact is present even in the parole context." *Id.* at 253.  The Court further noted that, "[i]t is often the case that an agency's policies and practices will indicate the manner in which it is exercising its discretion." *Id.* at 256, citing *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996) (observing that the reasonableness of discretionary agency action can be gauged by reference to the agency's policies and practices).  The Court found that in deciding whether an  administrative rule pertaining to Georgia's parole system violated the Ex Post Facto Clause the lower court should have considered a policy statement where it was a "formal, published statement as to how the Board intends to enforce the Rule." *Id.* at 256-57.  However, the Court explained that in the Ex Post Facto analysis, it was equally significant that,

---

[3] MICH. COMP. LAWS § 791.233e(1) provides that the purpose of parole guidelines is to "assist the parole board in making decisions that enhance the public safety."

to the extent there inheres in ex post facto doctrine some idea of actual or constructive notice to the criminal before commission of the offense of the penalty for the transgression, we can say with some assurance that where parole is concerned discretion, by its very definition, is subject to changes in the manner in which it is informed and then exercised. The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience. New insights into the accuracy of predictions about the offense and the risk of recidivism consequent upon the offender's release, along with a complex of other factors, will inform parole decisions.

*Id.* at 253 (internal citations omitted).

It is clear that the controlling inquiry is whether the retroactive application of a later enacted law or policy will create a sufficient risk of increasing the measure of punishment attached to a particular crime. *See Id.* at 250; *Morales*, 514 U.S. at 509. Here, unlike the plaintiff in *Garner*, Plaintiff is not challenging a newly enacted law, written policy or written rule. He is simply challenging the underlying philosophy that allegedly guides the current parole board members in making decisions regarding the release of sex offenders. The Ex Post Facto Clause provides that "[n]o State shall . . . pass any . . . ex post facto Law." U.S. Const., Art. I, § 10, cl. 1. The wording of the Clause "leaves no doubt that it is a prohibition upon *legislative* action." *Seling v. Young*, 531 U.S. 250, 270 (2001) (Scalia, J., concurring) (emphasis in original). A parole board member's philosophy regarding how best to protect public safety is simply not a law within the meaning of the Ex Post Facto Clause. Accordingly, that the collective philosophy of the parole board has evolved since Plaintiff was originally sentence to a philosophy that may be adverse to Plaintiff does not implicate the Ex Post Facto Clause.

### IV.  State Law

Plaintiff asserts a violation of Michigan statutes during his parole interview. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th

Cir. 1995); *Sweeton v. Brown*, 27 F.3d at 1166.  A state's failure to comply with its own law, rule or regulation does not by itself state a claim under § 1983.  *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *Spruytte v. Walters*, 753 F.2d 498, 508-09 (6th Cir. 1985).  To the extent that Plaintiff's complaint presents allegations under state law, the Sixth Circuit has stated that district courts should generally decline to exercise supplemental jurisdiction over state law claims under these circumstances.  *See Landefeld v. Marion Gen. Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Hawley v. Burke*, No. 97-1853, 1998 WL 384557, at *1-2 (6th Cir. June 18, 1998).  Therefore, Plaintiff's state law claims will be dismissed without prejudice.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. § 1915A(b).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Date:   __November 30, 2005__          /s/ Robert Holmes Bell_____
                                       ROBERT HOLMES BELL
                                       CHIEF UNITED STATES DISTRICT  JUDGE